### REILLY *v.* CONWAY.

WITNESSES—TIME OF EVENT—POSITIVE TESTIMONY.
  Where only one of several witnesses who testify concerning the time of an event is definite and positive as to the hour, his testimony is properly treated as establishing the fact.

Error to Wayne; Hosmer, J. Submitted October 3, 1899. Decided November 14, 1899.

*Assumpsit* by Thomas J. Reilly and Michael Brennan, executors of the last will and testament of Ann Leonard, deceased, against Mary A. Conway, for money had and received. From a judgment for defendant, plaintiffs bring error. Affirmed.

*Brennan, Donnelly & Van De Mark*, for appellants.

*P. J. M. Hally* ( *William S. Sheeran*, of counsel), for appellee.

LONG, J. This suit was brought by the plaintiffs, as executors of the will of Ann Leonard, deceased, to recover $1,000 and interest, in the possession of the defendant, which the defendant claims was given to her by Ann Leonard on the day of her death. It appears that, for several years prior to the death of Ann Leonard, the

defendant had rendered various services in the. way of caring for her at different times when she was ill, and performing household duties for her at her home. Ann Leonard made a will, by the ninth clause of which defendant was given $500. On January 2, 1896, Thomas J. Reilly, who up to that time had been the legal adviser of Ann Leonard, was called to see her. He arrived at about 11 o'clock in the morning, and found Mrs. Leonard in bed. He says she told him she wanted $500 for defendant, and $500 for herself and the house; that he told her it would be impossible for him to bring it to her that day; that she then gave him a check for $1,000 on the Wayne County Savings Bank, and that defendant, who was present, stated that she would come down to his office and get it; that defendant did come to his office at pretty nearly half past 1 o'clock in the afternoon; and that he then and there gave her the $1,000, and told her to give it to Mrs. Leonard, and she said she would.

The defendant testified that she had known Mrs. Leonard for about 13 years; that witness Reilly was at the house on January 2d about 11 o'clock; that her mother was present; that Mr. Reilly went into the bedroom and talked with Mrs. Leonard; and that—

"When he came out he handed me a check. I didn't know what it was, but he had Mrs. Leonard sign her name to it, and when he was leaving the house he said, 'Mrs. Conway, I will be up at 5 o'clock in the evening.' I said, 'I will not be here, but you can give the money to my mother or Mrs. Leonard;' and he said, 'I cannot give the money to either one;' and I said, 'Mr. Reilly, I will be down about 2 o'clock.' I called at Mr. Reilly's office that day about half past 1 or 2 o'clock, and had a conversation with him. He handed me the money, and told me not to put it back into the same bank, and said, 'You can do better with the money than as if Mrs. Leonard had left you the cottage.' I told him I would take the money up and show it to Mrs. Leonard, I knew she would be pleased when I got it, and Mr. Reilly said, 'All right.'"

Witness admitted that Mrs. Leonard was dead when she reached the house.

The mother of defendant was called as a witness by the defense, and testified that, during the past five years, Mrs. Leonard had said at various times that she would leave the defendant the price of a home; that, after Mr. Reilly left the house that day, she went into Mrs. Leonard's bedroom, and Mrs. Leonard told her she had fixed a check for defendant for $1,000, and then said, "I don't think I have left her enough." Witness testified further that Mrs. Leonard died about half past 2 o'clock. Defendant called other witnesses, who testified that defendant had for several years been in almost constant attendance upon Mrs. Leonard, who was sick much of the time, and frequently needed as much care and attendance as a child. Mr. Reilly was recalled, and denied that he advised defendant to deposit the money in some other bank, but said that he told her to take it directly to Mrs. Leonard.

The court thereupon charged the jury substantially as follows:

"Now, gentlemen of the jury, if you find in this case that the money was to be returned to Mrs. Leonard; if you find that Mrs. Leonard signed the check, and desired Mr. Reilly to get the check cashed and send the money home,—have the money sent home to her,—then and under those circumstances the plaintiffs in this case would be entitled to recover the sum of $1,000, with interest from the 1st day of February—from the 4th day of February, 1896. I think it is permissible in this case, gentlemen of the jury, for you to find, from all the testimony which has been introduced here, if you so desire to find it (that is, if, applying your judgment, you think that is the fact), * * * that $500 of the $1,000 which she then received she was authorized to hold. And I think, gentlemen, you may draw the inference from the testimony, inasmuch as it is contended on behalf of the defendant that the entire sum was to be given to her, and inasmuch as it is contended on her behalf that there was no delivery by Mr. Reilly to her to be given to Mrs. Leonard, but that Mr. Reilly gave her the money out and out,—I think you are at liberty to find that the money belonged

to her, and that there was a delivery on the part of Mr. Reilly.

"*Counsel for plaintiffs:* So far as the $500 was concerned?

"*The Court:* So far as either. If they believe the testimony of Mrs. Conway as to what took place with Mr. Reilly, they are at liberty to find that the entire sum of $1,000 was intended, on the part of Mrs. Leonard, should be applied directly, through the mediumship of Mr. Reilly; and in that case, of course, gentlemen of the jury, there would be a verdict for the defendant. If, however, gentlemen, you believe that only $500 of that money was to be applied, I think, as suggested by counsel for the plaintiffs, you may find that she is indebted to the plaintiffs in the sum of $500, instead of $1,000, with interest from the 4th day of February, 1896."

Plaintiffs asked the court to direct the jury that:

"If Mrs. Leonard directed Mr. Reilly to draw a check for $1,000, to be cashed, and the proceeds to be delivered to her, and Mr. Reilly did so, and sent proceeds by the defendant, to be delivered to Mrs. Leonard, then plaintiffs are entitled to recover."

Counsel for plaintiffs contend that the court refused this request. We think, however, that this request was substantially given in the part of the charge quoted above. He certainly directed the jury that if they found that Mrs. Leonard signed the check, and desired Mr. Reilly to get it cashed and send the money home to her (Mrs. Leonard), the plaintiffs would be entitled to recover.

One request was made by the plaintiffs which the court refused to give. It was as follows:

"If the jury find that Mrs. Leonard was dead when Reilly paid over the money to defendant, then plaintiffs are entitled to recover."

It is claimed by counsel that there is such a conflict of evidence on the question of whether Mrs. Leonard was dead at the time that the request should have been given, and that, if it was found that Mrs. Leonard was not living at the time of the passing of the money to defendant, the agency of Reilly ceased, and a delivery after that time did

not operate as a valid delivery. The testimony on this question is very meager. Mr. Reilly testified that the defendant came down to his office "pretty near half past 1 o'clock in the afternoon, and I gave her the money." Defendant testified that she called at Reilly's office about half past 1 or a quarter to 2 o'clock, and had a conversation with him. She says:

"When I went into the office, Mr. Reilly was just coming out of the side room, and he had the money in his hand, and he handed the money,—counted it out to me."

This is the only testimony fixing the time when the money was paid to defendant. On the question of the time of the death of Mrs. Leonard, the defendant testified:

"I got back to Mrs. Leonard's between half past 2 and a quarter to 3 in the afternoon, and Mrs. Leonard was dead."

Her mother testified that Mrs. Leonard died about half past 2, and defendant returned to the house about 3 o'clock. Dr. Frank Newman testified that he was at Mrs. Leonard's house about half past 1, and remained there about 20 minutes, and Mrs. Leonard was living when he left. Mary Moran testified that she was there when Mrs. Leonard died, but that she did not know what time it was. This was all the testimony as to the time when Mrs. Leonard died. Therefore it appears that the only witness who testified definitely to the time was the mother of defendant, who gave it at about half past 2. There was no testimony contradicting this, and it must be taken as a fact established in the case that that was the hour of Mrs. Leonard's death. It will be seen, also, from the testimony of defendant and Mr. Reilly, that the money was paid to defendant no later than a quarter before 2 o'clock; so that it is shown that the money was paid over to defendant at least three-quarters of an hour before Mrs. Leonard's death. The court therefore properly refused the request.

From this record it appears that Mrs. Leonard had in-

tended to substantially aid the defendant, either in money or by the purchase of a home; and the jury found from the facts that Mrs. Leonard directed that this $1,000 should be drawn from the bank on that day by Mr. Reilly, and paid over to the defendant.

While some other questions are raised, we do not deem it necessary to discuss them, as we are satisfied from an examination of the record that no error was committed.

The judgment must be affirmed.

The other Justices concurred.